# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **HECTOR QUEZADA-ARTIAGA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:10-CV-2820-VEH |
| | ) |
| **LA MACARENA, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Hector Quezada-Artiaga's ("Quezada-Artiaga") Motion for Entry of Judgment for a Specific Amount and Attorneys' Fees (Doc. 15) against Defendant La Macarena, Inc. ("La Macarena"). For the reasons discussed in this Memorandum Opinion, the pending Motion is due to be **GRANTED**.

**I.     BACKGROUND**

On October 18, 2010, Quezada-Artiaga filed his Complaint (Doc. 1) against La Macarena in this Court. The Complaint alleged that Quezada-Artiaga was an employee of La Macarena, who operated the restaurant at which Quezada-Artiaga worked as a bus boy. (Doc. 1 at ¶¶ 8, 11-12). Quezada-Artiaga alleges that he was paid below the minimum wage for bus boys. (Doc. 1 at ¶ 15). Additionally,

Quezada-Artiaga avers that La Macarena improperly treated him as a salaried exempt employee, thereby improperly denying him the premium overtime rate of pay for each hour worked above forty per work-week. (Doc. 1 at ¶¶ 13-14). By engaging in this conduct, La Macarena violated 29 U.S.C. § 207 by failing to pay overtime wages to Quezada-Artiaga, and La Macarena violated 29 U.S.C. § 206 by failing to pay Quezada-Artiaga the appropriate minimum wage. (Doc. 1 at ¶¶ 24-28).

Quezada-Artiaga served La Macarena with a copy of the Summons, together with a copy of his Complaint, on November 5, 2010. (Doc. 4). La Macarena failed to file an answer or otherwise defend itself by the November 26, 2010, deadline and on December 6, 2010, Quezada-Artiaga filed a Motion for Entry of Default and a Motion for Default Judgment. (Doc. 6). The clerk made an Entry of Default on December 7, 2010. (Doc. 7). On December 7, 2010, the Court issued an Order to Show Cause why a Default Judgment should not be entered. (Doc. 8). La Macarena was ordered to provide by December 28, 2010, an explanation for its failure to respond. La Macarena failed to file any response to the Court's Order. The Court granted the Motion for Default Judgment and entered a Partial Final Judgment Order as to La Macarena's liability on January 13, 2011. (Doc. 10). The Court then set the action for a bench trial on the amount of damages only. (Doc. 12). This bench trial was continued on Quezada-Artiaga's request and on March 17, 2011, Quezada-

Artiaga filed the present motion.

## II.    ANALYSIS

"While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (federal law requires judicial determination of damages absent factual basis in record).

The court may make its determination as to the appropriate remedy with or without a hearing.[1] Addressing this issue in another case, Judge William H. Steele of the Southern District of Alabama has provided a helpful and succinct framework, writing:

> [T]here is no requirement that a hearing be conducted in all default judgment proceedings to fix the appropriate level of damages. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (explaining that evidentiary hearing is not *per se* requirement for entry of default judgment, and may be omitted if all essential evidence is already of record). Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required. *See, e.g., Chudasama*, 123 F.3d at 1364 n.27 (judicial determination of damages is unnecessary where claim is for sum certain or for sum which can by computation be made certain); *United Artists Corp. v. Freeman*,

---

[1] No jury has been demanded in this case.

> 605 F.2d 854, 857 (5th Cir. 1979) (award of statutory damages was improper "without a hearing or a demonstration by detailed affidavits establishing the necessary facts"); *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-64 (1st Cir. 2002) (district court did not abuse discretion, based on record before it, in declining to hold hearing before awarding statutory damages); *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) (evidentiary hearing not necessary where facts in the record enable the court to fix the amount which the plaintiff is lawfully entitled to recover); *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (although court must make independent determination of the sum to be awarded, court need not hold a hearing, but may rely on detailed affidavits or documentary evidence); *United States v. Cabrera-Diaz*, 106 F. Supp. 2d 234, 243 (D.P.R. 2000) (similar).

*Atl. Recording Corp. v. Carter*, 508 F. Supp. 2d 1019, 1025 (S.D. Ala. 2007) (footnote omitted); *see also DLJ Mortg. Capital, Inc. v. Sunset Direct Lending, LLC*, No. 07-CV-1418-HB, 2008 WL 4489786, at *4 (S.D.N.Y. Oct. 6, 2008) ("A court may determine the appropriate damages on the basis of affidavits and other documentary evidence, 'as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment.'") (quoting *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  In the current case, a hearing is not necessary because Quezada-Artiaga has provided the Court with sufficient affidavits and documentary evidence to support his requests for relief.  Quezada-Artiaga attached his sworn affidavit to the motion stating the dates and hours he worked for La Macarena and the amount that he was paid. (Doc. 15 Ex. Attach. 2).

Quezada-Artiaga's Complaint consists of two counts, both of which arise under the Fair Labor Standards Act ("FLSA"). According to Count I, La Macarena violated 29 U.S.C. § 206 by willfully failing to compensate Quezada-Artiaga for all hours worked during his employment at the minimum rate required by the FLSA. (Doc. 1 at ¶¶ 22, 24). In Count II, Quezada-Artiaga asserts that La Macarena violated 29 U.S.C. § 207 by willfully failing to compensate him at the premium overtime rate required for all hours worked above 40 in a work week. (Doc. 1 at ¶ 26).

A.   **STATUTORY DAMAGES**

   1.   **Unpaid Compensation Calculation**

In relevant part, 29 U.S.C. § 216(b) states: "Any employer who violates the provisions of [section 206 or section 207] of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Given this standard, the court looks to the record provided by Quezada-Artiaga to determine the damages.

As stated previously, Quezada-Artiaga's claim for statutory damages must be supported by the record, since in a default judgment proceeding, "[d]amages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors*

*Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F. 2d 854, 857 (5th Cir. 1979)).[2]

Pursuant to 29 U.S.C. § 216(b), Quezada-Artiaga is due to recover the amount between his actual wage and the minimum wage he should have received under the FLSA. Quezada-Artiaga is also due to recover the difference between his actual wage and one and one-half times the minimum rate if he works in excess of 40 hours during a workweek. *Id.*; 29 U.S.C. § 207(a)(1). According to his sworn affidavit, the hourly rate of pay for Quezada-Artiaga(based upon the weekly salary) was equal to $3.33 from June 2008 through November 2008, and to $5.56 from December 2008 through February 12, 2010. (Doc. 15 Attach. 2 at ¶¶ 5, 7, Attach. 4). Quezada-Artiaga's affidavit also indicates that he worked an average of 90 hours per week over the course of his employment and that his weekly salary was $300.00 initially and subsequently increased in December 2008 to $500.00. (Doc. 15 Attach. 2 at ¶¶ 5, 7).

Based upon the applicable FLSA statutory rates, Quezada-Artiaga would have been due to receive a minimum wage of $5.85 for his first 8 weeks of work, a minimum wage of $6.55 for 50 weeks, from August 2008 through July 2009, and a minimum wage of $7.25 for the remaining 28 weeks. Instead, Quezada-Artiaga was

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

underpaid by $372.75 for the first 8 weeks of work (*i.e.*, ((40 x 5.85) + (50 x (1.5 x 5.85)) - 300.00)), $453.25 for the next 18 weeks (*i.e.* (40 x 6.55) + (50 x (1.5 x 6.55)) - 300), $253.25 for the next 32 weeks (*i.e.* (40 x 6.55) + (50 x (1.5 x 6.55)) - 500), and $333.75 for the remaining 28 weeks (*i.e.* (40 x 7.25) + (50 x (1.5 x 7.25)) - 500) based on a 90 hour work week.[3] Adding these 86 weeks of underpayment together (*i.e.* ($372.75 x 8) + ($453.25 x 18) + ($253.25 x 32) + ($333.75 x 28)), Quezada-Artiaga was due to receive an additional $28,589.50 in compensation during his employment with La Macarena.

---

[3] Pursuant to 29 U.S.C. § 206(a)(1):

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section not less than –

(A) $ 5.85 an hour, beginning on the 60th day after . . . May 25, 2007[];

(B) $ 6.55 an hour, beginning 12 months after that 60th day; and

(C) $ 7.25 an hour, beginning 24 months after that 60th

**2.      Liquidated Damages**

Additionally, under the FLSA, Quezada-Artiaga is entitled to have this amount doubled, since "[a]ny employer who violates the provisions of [section 206 or section 207] of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[4]  Thus, Plaintiff is due a sum of $57,179.00 (*i.e.*, $28,589.50 x 2) as his total statutory damages due under the FLSA.

**B.      Attorneys' Fees**

Quezada-Artiaga's counsel seeks $9,868.75 in attorney's fees. (Doc. 15 at 2). The FLSA authorizes an award of attorney's fees under 29 U.S.C. § 216(b), which states, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant,

---

[4] Ordinarily, Defendant would have the opportunity to mount a "good faith" defense under 29 U.S.C. § 260, which would allow the court to have discretion in awarding liquidated damages. The employer bears the burden of establishing this defense. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 n.5 (11th Cir. 1991). The Defendant having made no such effort, this court lacks such discretion and, in any event, since the admitted facts establish that the violations were willful (*see* Doc. 1 at ¶¶ 19-20), a finding of good faith would be inconsistent with willfulness. *See, e.g., Alvarez Perez v. Sanford-Orland Kennel Club, Inc.*, 515 F.3d 1150, 1166 (11th Cir. 2008) (holding that a willfulness finding by a jury "precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question.").

and costs of the action." This provision has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases.").

An attorney's fees award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "This 'lodestar' may then be adjusted for the results obtained." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "Although a district court has wide discretion in performing these calculations, '[t]he court's order on attorney's fees must allow meaningful review-the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.'" *Id.* (quoting *Norman v. Hous. Auth.*, 836 F.2d 1292, 1304 (11th Cir. 1988)) (internal citation omitted). The Eleventh Circuit has applied this method in the FLSA context, incorporating the factors used in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). *Kreager*, 775 F.2d at 1543-1544. Accordingly, the court will analyze the application for attorney's fees using the

lodestar method.

### 1.     Reasonable Hourly Rate

To determine a reasonable hourly rate, the court looks to the attorney's skill, experience, and reputation. *Loranger*, 10 F.3d at 781.[5]  Also, the "party who applies for attorney's fees is responsible for submitting satisfactory evidence to establish both that the requested rate is in accord with the prevailing market rate and that the hours are reasonable." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). Typically, "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299.  However, the court may use its own discretion and expertise to determine the appropriate hourly rate to apply for an attorney's fee award. *See Loranger*, 10 F.3d at 781 ("A court, however, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either

---

[5] In determining this amount, the court may consider the twelve *Johnson* factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Silva v. Miller*, 547 F. Supp. 2d 1299, 1305 n. 8 (S.D. Fla. 2008) (citing *Schafler v. Fairway Park*, 147 Fed. Appx. 113 (11th Cir. 2005); *Johnson*, 488 F.2d at 717-719).

with or without the aid of witnesses as to value." (internal quotation omitted)); *see also Swisher v. The Finishing Line, Inc.*, No. 6:07-cv-1542-Orl-28UAM, 2008 WL 4330318, at *6 (M.D. Fla. Sept. 22, 2008) (citing *Loranger* and *Norman* when the movant for attorney's fees in an FLSA case did not provide enough information for the court to establish whether the rate was reasonable and, on its own initiative, compared requested rate to rates awarded in other similar cases in the jurisdiction, including those in which the attorney had participated).

Here, Quezada-Artiaga's counsel has only provided the court with their affidavits and their attorney fee calculation charts to establish that the requested fee is reasonable. (Doc. 15 Attachs. 6, 8, 10, 12). The charts from Quezada-Artiaga's counsel lists each task completed in litigating this case. (Doc. 15 Attachs. 8, 12). A rate of $300.00 per hour is assigned to Ivey and $175.00 per hour to Rubio. (Doc. 15 Attachs. 8, 12).

Ivey asserts that he typically asks for a $300.00 rate, but fails to list any of those cases. (Doc. 15 Attach. 6 at ¶ 5). The Court's own independent research shows that Ivey is a shareholder at the Ivey Law Group, LLC and was previously a shareholder at Maynard, Cooper & Gale, P.C. *See* http://www.linkedin.com/in/wyndallivey (last visited Apr. 4, 2011). Ivey has been in practice since 1999. *See* http://www.martindale.com/Wyndall-A-Ivey/33931-

lawyer.htm (last visited Apr. 4, 2011). Rubio asserts that he typically asks for a $175.00 rate, but also fails to list any of those cases. (Doc. 15 Ex. 10 at ¶ 5). The Court's own independent research shows that Rubio has been in practice since 2008 at Rubio Law Firm, P.C. *See* http://www.linkedin.com/pub/freddy-rubio/15/5a7/152 (last visited Apr. 4, 2011).

While the evidence submitted by Quezada-Artiaga fails to meet the burden of establishing the reasonableness of the fees, the court's own research has established that, although the requested rate is not reasonable for Ivey, the requested rate is reasonable for Rubio. Recent cases from district courts within the Eleventh Circuit have concluded that an hourly rate of $250.00 is reasonable for an attorney with Ivey's experience and an hourly rate of $175.00 is reasonable for an attorney with Rubio's experience. *See*, *e.g.*, *Nipper v. Lakeland Hotel Investors, Ltd.*, No. 8:10-cv-498-T-33EAJ, 2010 WL 4941718, at *5-6 (M.D. Fla. Nov. 30, 2010) (finding that $250.00 rate was reasonable in the Tampa market for work performed by attorney who had practiced labor and employment law for 20 years in an FLSA case in lieu of $340.00 fee requested); *Shannon v. Saab Training USA, LLC*, No. 6:08-cv-803-Orl-19DAB, 2009 WL 1773808, at *6-7 (M.D. Fla. June 23, 2009) (finding that $175.00 was a reasonable hourly rate for attorney with three years of legal experience in Orlando market in lieu of $300.00 hourly rate requested); *Heaps v. Parker Oil Co.*,

No. 5:06-CV-4637-CLS, (Doc. 87 at 3) (N.D. Ala. Sept. 25, 2008) (finding that $250.00 rate was reasonable as to work performed in the Northern District of Alabama in an uncontested FLSA proceeding in lieu of $300.00 rate requested); *see also Swisher*, 2008 WL 4330318, at *6 (finding that a rate of $250.00 per hour was reasonable in the Orlando market in a similar FLSA case where attorneys had been awarded $250 as a reasonable rate in other cases in that district). Additionally, this case presents fairly routine issues arising under the FLSA with a single plaintiff, and Ivey has experience in litigating FLSA cases. *See* http://www.iveylawgroup.com/experience. Thus, considering the rate awarded in other prior FLSA cases, the relative complexity of the matter, and the experience of the attorneys, the court finds that the hourly rate of $250.00 is a reasonable one for Ivey and the hourly rate of $175.00 is a reasonable one for Rubio.

    **2.    Reasonable Number of Hours**

Quezada-Artiaga's counsel Wyndall A. Ivey avers that he worked 22.9 hours in the course of this matter. (Doc. 15 Attach. 6 at ¶ 5) Co-counsel Freddy Rubio avers that he worked 14.25 hours on this litigation. (Doc. 15 Attach. 10 at ¶ 5). Each attorney has attached their timesheet for this matter to their sworn affidavit (Doc. 15 Attachs. 8, 12).

This case was scheduled for a bench trial on damages on March 9, 2011. That

trial was continued when Quezada-Artiaga failed to appear. In lieu of a trial, the instant motion was filed. There is an entry on March 9, 2011, for each attorney. Ivey's time sheet entry for this date states "Meet with F. Rubio in preparation for Bench Trial; attend Bench Trial (meet with J. Hopkins); draft affidavit for [Quezada-Artiaga]." (Doc. 15 Attach. 8). Ivey claims a total of 3.5 hours for this entry. (Doc. 15 Attach. 8). Rubio's entry on this same day states "Hearing on Damages. Met with client at office and explained process of proving damages. Hearing was cancelled. Prepared affidavits and timesheet." (Doc. 15 Attach. 12). Rubio claims a total of 2 hours for this entry. (Doc. 15 Attach. 12). Ivey's timesheet also reflects an entry on March 16, 2011, for 1.5 hours for the preparation of the present motion and the drafting of affidavits. (Doc. 15 Attach. 8). Had Quezada-Artiaga appeared before this Court on March 9, 2011, the present motion would be unnecessary, although an evidentiary hearing would have been required. Based upon the issues in this case and the fact that only direct examination would have occurred, the Court finds that the hours extended by both Ivey and Rubio on March 9, 2011, were excessive to the extent they exceeded 1.5 hours each. The hours expended by Ivey and Rubio on March 9, 2011, shall be reduced to 1.5 hours each.

The Court finds that Ivey reasonably expended 20.9 hours and Rubio reasonably expended 13.75 hours on this litigation. The Court finds that this figure

represents a reasonable expenditure of time for such a matter, given that during this time Quezada-Artiaga's counsel opened the file, drafted and filed the complaint, filed for default, gathered evidence proving damages, prepared supporting affidavits, and closed the file.

Multiplying the reasonable hours expended by the reasonable hourly rate of $250.00 per hour in the case of Ivey and $175.00 in the case of Rubio, the total amount of reasonable attorney's fees due is $7,631.25.

### 3. Costs

Finally, the court turns to Quezada-Artiaga's request for costs. Quezada-Artiaga seeks costs totaling $400.00. (Doc. 15 Attach. 8). These costs constitute the filing fee charged by the court and the cost of service. (Doc. 1 (noting filing fee of $350.00 in CM/ECF docket entry); Doc. 15 Attach. 8). The court finds that Quezada-Artiaga is due to be awarded these reasonable costs.

## III. CONCLUSION

Quezada-Artiaga's damages calculations are supported by sufficient proof and appear to be fair and accurate under the circumstances. Relatedly, Quezada-Artiaga's request for attorney's fees and costs is reasonable to the extent it conforms with this Court's opinion. Accordingly, Quezada-Artiaga is entitled to:

1. An award of $28,589.50 in unpaid compensation;

2. An award of $28,589.50 in liquidated damages;

3. An award of $7,631.25 in attorney's fees; and

4. An award of $400.00 in court costs.

Therefore, Quezada-Artiaga's Motion seeking a final default judgment in the total amount of $65,210.25 is due to be granted under the FLSA. A separate order of final default judgment will be entered.

**DONE** and **ORDERED** this the 7th day of April, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge